**ROYAL PLASTICS, INC., Appellant,**

v.

**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Appellee.**

[Cite as *Royal Plastics, Inc. v. State Auto. Mut. Ins. Co.* (1994), 99 Ohio App.3d 221.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66582.

Decided Dec. 19, 1994.

222

---

*Marshman, Snyder & Kapp, Richard A. Lesco* and *Laurence R. Snyder,* for appellant.

*Bertsch, Millican & Winslow* and *James T. Millican,* for appellee.

KRUPANSKY, Presiding Judge.

Plaintiff-appellant Royal Plastics, Inc. ("Royal") appeals from an order of the trial court granting summary judgment in favor of defendant-appellee State Automobile Mutual Insurance Company ("State Auto") in this commercial liability insurance coverage dispute.

Royal filed a one-count complaint for declaratory judgment, damages and other relief against State Auto in the trial court on August 17, 1992. Royal's complaint alleged State Auto breached its duty to defend and indemnify Royal under a comprehensive general business liability insurance policy in connection with a lawsuit filed against Royal by Hercules Products, Inc. ("Hercules"). The lawsuit filed against Royal by Hercules involved claims that water pump component parts manufactured by Royal and sold to Hercules were negligently made and failed to conform to the sales contract and various express and implied warranties (the "Hercules Litigation"). Royal sought in the declaratory judgment action to recover from State Auto the amount it paid to Hercules to settle the component part litigation together with costs incurred by Royal in defending the Hercules Litigation. State Auto denied the substantive allegations of Royal's complaint and raised various affirmative defenses.

State Auto thereafter filed a motion for summary judgment in addition to a joint stipulation of facts with exhibits on July 30, 1993. State Auto's motion for summary judgment argued the Hercules Litigation did not fall within the scope of its commercial general liability insurance coverage for "occurrences" under the policy and was subject to four policy exclusions. Royal filed a brief in opposition to State Auto's motion for summary judgment with additional exhibits on August 23, 1993. State Auto subsequently filed a reply brief making additional legal arguments in support of its motion for summary judgment on September 10, 1993.

The trial court granted State Auto's motion for summary judgment in an order journalized September 15, 1993. Royal timely appeals raising the following three related assignments of error:

"I. Trial court erred in granting defendant/appellee's motion for summary judgment.

"II. Trial court erred in failing to find that defendant was obligated to defend the suit filed against plaintiff by Hercules Products.

"III. The trial court erred in failing to find that defendant was obligated to indemnify and reimburse plaintiff for the reasonable settlement plaintiff made in the suit filed against it by Hercules Products."

Royal's three assignments of error lack merit.

Royal generally argues the trial court improperly granted State Auto's motion for summary judgment since the claims in the Hercules Litigation arguably or potentially fell within the scope of the commercial general liability policy issued to Royal by State Auto and did not fall within any policy exclusion. Royal specifically argues the Hercules Complaint contained claims for "property damage" arising out of an "occurrence" which were not excluded by any provision within the policy, *i.e.*, any exception to the policy exclusionary provision.

■ However, it is well established that summary judgment is warranted pursuant to Civ.R. 56(C) when, after viewing the evidence in the light most favorable to the nonmovant, the record demonstrates the following, *viz.*: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to only one conclusion; and (3) the moving party is entitled to judgment as a matter of law. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. Based on our review of the record in compliance with this standard, Royal has failed to demonstrate the trial court erred by granting summary judgment to State Auto in the case *sub judice*.

■ It is well settled in this context that the identical standards of construction apply to insurance contracts as apply in other written contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102. The Commercial General Liability Insurance Policy coverage provision in dispute in the case *sub judice* provides in pertinent part as follows:

"SECTION I—COVERAGES

"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

"1. Insuring Agreement

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of * * * 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking these damages. * * *

"b. This insurance applies to * * * 'property damage' only if:

"(1) The * * * 'property damage' is caused by an *'occurrence'* that takes place in the 'coverage territory' * * * [emphasis added]."

The term "occurrence" is thereafter defined in Section V of the insurance policy as follows:

"9. *'Occurrence' means an accident,* including continuous or repeated exposure to substantially the same general harmful conditions." (Emphasis added.)

■ This court of appeals must review the allegations in the complaint filed by Hercules against Royal to determine whether any of the claims potentially or arguably fell within the scope of the insurance policy coverage. *Zanco v. Michigan Mut. Ins. Co.* (1984), 11 Ohio St.3d 114, 11 OBR 413, 464 N.E.2d 513. The Hercules Complaint in the case *sub judice* arose from allegedly defective component parts supplied by Royal to Hercules and contained the following allegations:

"14. Defendants had a duty to properly design and manufacture the pump component molds and pump component parts.

"15. Defendants breached this duty because several problems arose with the pumps, including but not limited to:

"a) a lack of concentricity of the impeller due to poor tool design, tool maintenance, molding process, and component welding;

"b) failure to use the material desired as a result of improper identification of sample plastic;

"c) the use of material contaminated with machinery oil;

"d) failure to inform Hercules of the vulnerability of the plastic used in the final product; and

"e) failure to properly identify the characteristics of the seal needed to install the impeller, resulting in contamination.

"These problems caused or contributed to significant stress on a weakened material, thereby causing extensive cracking and breakage of the impeller, *as well as damaging other components of the completed pump product.* [Emphasis added.]

"16. The problems described in the preceding paragraph caused the pumps to fail and proximately caused significant damages to Hercules."

These claims in the Hercules Complaint allege "property damage" arising out of a breach of contract. However, the Hercules Complaint clearly does not allege an "occurrence" within the scope of the general liability policy in the case *sub judice.* *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd., supra.* As noted above, the insurance policy defines "occurrence" to mean "an accident." This language is "clear and plain, something only a lawyer's ingenuity could make ambiguous." *Id.,* 64 Ohio St.3d at 664, 597 N.E.2d at 1101. It would take an exceptionally fertile mind to contort the meaning of the term "accident" to encompass the claims in the case *sub judice.*

■ The Hercules Complaint contains absolutely no allegation of "accident" and simply contains claims by a manufacturer against a component parts supplier

that improperly manufactured component parts. No customer ever sued Hercules or Royal for property damage based on an occurrence. It is well established that a general commercial liability policy does not cover claims of negligent manufacture as in the case *sub judice*. *Hamilton Die Cast, Inc. v. United States Fid. & Guar. Co.* (C.A.7 1975), 508 F.2d 417 (applying Ohio law). *Insurance coverage is limited to claims of negligent manufacture which result in an occurrence*. Since the Hercules Complaint did not allege such an occurrence, the trial court properly granted summary judgment for State Auto in the case *sub judice*.

State Auto also argued in the trial court that it properly denied coverage for any of the claims in Hercules Litigation based on four separate business risk exclusions in Section I, Part 2 of the insurance policy. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd., supra; Zanco v. Michigan Mut. Ins. Co., supra.* The four policy exclusions relied on by State Auto to exclude coverage for the claims in the Hercules Litigation follow, *viz.:* (1) the "work performed" exclusion; (2) the "impaired property" exclusion; (3) the "sistership" exclusion; and (4) the "products-completed operations hazard." These four exclusions generally deny coverage for damages resulting from defective work or products provided by an insured.

■ A cursory examination of the specific claims for damages set forth in Paragraph 17 of the Hercules Complaint reveals many of the claims are excluded in whole or in part by one or more of these exclusions. However, since the record demonstrates the "products-completed operations hazard" exclusion completely excludes coverage for the claims asserted in the Hercules Complaint, we shall not specifically address the remaining three exclusions, which are set forth in the Appendix. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd., supra.*

Section I, Part 2 contains the exclusions from coverage under the commercial general liability policy and provides in pertinent part as follows:

"2. Exclusions.

"This insurance does not apply to:

" * * *

"1. 'Property damage' to 'your product' arising out of it or any part of it and included in the 'products-completed operations hazard'. * * * "

Section V of the policy defines "products-completed operations hazard" as follows:

"11.a. 'Products-completed operations hazard' includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

"(1) Products that are still in your physical possession; or

"(2) Work that has not yet been completed or abandoned."

The court in *Buckeye Union Ins. Co. v. Liberty Solvents & Chemicals Co.* (1984), 17 Ohio App.3d 127, 17 OBR 225, 477 N.E.2d 1227, explained the effect of a similar products hazard insurance policy exclusion as follows:

*"The effect of a product hazard exclusion in a policy of liability insurance is to relieve the insurer of the duty to defend and indemnify its insureds in actions charging strict liability, negligence and breach of warranty.* Thus in accordance with established principles of products liability, there must be a defective condition in the product itself which proximately causes the damage before the product hazard exclusion will preclude coverage. [Citations omitted.]

"This defective condition may be a design defect in the product; a manufacturing defect in the product; or in the case of an inherently dangerous or unavoidably unsafe product, a failure to provide adequate warnings. [Citations omitted.]" (Emphasis added.) *Id.* at 135, 17 OBR at 234, 477 N.E.2d at 1236.

As noted above, the Hercules Complaint arose out of defective water pump component parts sold by Royal to Hercules and was based on claims of negligence, breach of contract and failure to conform to express and implied warranties. Since the Hercules Complaint did not allege an "occurrence" to trigger coverage under the general commercial liability insurance policy and the policy issued by State Auto to Royal expressly excluded coverage for such claims alleged by Hercules in its complaint, the trial court did not err by granting summary judgment for State Auto. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd., supra; Buckeye Union Ins. Co. v. Liberty Solvents & Chemicals Co., supra.* It, therefore, follows the trial court did not err by concluding State Auto had neither a duty to defend nor indemnify Royal in the Hercules Litigation.

Accordingly, Royal's three assignments of error are overruled.

*Judgment affirmed.*

DYKE and WEAVER, JJ., concur.

*Appendix*

Section I, Subpart 2 of the policy contains the following three additional "work performed," "impaired property" and "sistership" exclusions from insurance coverage:

"k. 'Property damage' to 'your product' arising out of it or any part of it. * * *

"* * * *

"m. 'Property damage' to 'impaired property' or property that has not been physically injured, arising out of:

"(1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or

"(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

"This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

"n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

"(1) 'Your product';

"(2) 'Your work'; or

"(3) 'Impaired property';

"if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. * * *"