[Cite as *Esber Beverage Co. v. Heineken USA Inc.*, 2011-Ohio-5939.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ESBER BEVERAGE COMPANY | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2011CA00033 |
| HEINEKEN USA, INC, ET AL | |
| Defendants-Appellants | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2008 CV 05055

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     November 14, 2011

APPEARANCES:

For Plaintiff-Appellee                  For Defendants-Appellants

CARI FUSCO EVANS                        JAMES L. MESSENGER
Fischer, Evans & Robbins, Ltd.          RICHARD J. THOMAS
4505 Stephen Circle NW, Suite 100       JERRY R. KRZYS
Canton, Ohio 44718                      6 Federal Plaza Central, Suite 1300
                                        Youngstown, Ohio 44503

*Hoffman, P.J.*

(¶1)     Defendants-Appellants Heineken USA, Inc., et al. (hereinafter, collectively "HUSA") appeal the September 18, 2009 Judgment Entry entered by the Stark County Court of Common Pleas, which granted declaratory judgment in favor of plaintiff-appellee Esber Beverage Co. (hereinafter "Esber").

STATEMENT OF THE FACTS AND CASE

(¶2)     Esber is a Canton, Ohio based, family-owned and operated beverage wholesaler serving Ohio and the United States.   Esber has distributed Heineken products since 1969, and Newcastle Brown Ale (hereinafter, "the Brand") since 1976.

(¶3)     Prior to April 28, 2008, Heineken NV was an international company based in Holland.  HUSA is a wholly owned subsidiary of Heineken BV, which, in turn, is a wholly owned subsidiary of Heineken NV. Also, prior to April 28, 2008, Scottish & Newcastle (S&N) was an international company with subsidiaries in 19 countries; Scottish & Newcastle UK Ltd ("S&N UK") was a wholly owned subsidiary of S&N based in the United Kingdom; Newcastle Federation Breweries ("NFB") was a wholly owned subsidiary of S&N UK and brewed the Brand; and Scottich & Newcastle Importers, Inc. ("SNIC") was a wholly owned subsidiary of S&N UK, located in California, and through which NFB imported the Brand into the United States.  At all times prior to September 1, 2008, Esber was distributing the Brand through NFB's import agent, SNIC, pursuant to its franchise governed by the Ohio Alcoholic Beverage Franchise Act, R.C. 1333.83 et seq. ("the Act").

(¶4)     In 2007, and early 2008, Heineken NV and Carlsberg A/S, an international company based in Denmark, entered into multiple agreements to form a joint venture

company, Sunrise Acquisitions Limited, for the sole purpose of acquiring and dividing the assets of S&N. On January 25, 2008, Sunrise Acquisitions and S&N announced "they had reached an agreement on the terms of the recommended cash acquisition of the entire issued and to be issued share capital of [S&N] by [Sunrise Acquisitions]." Ultimately, Heineken NV acquired S&N's business in Belgium, Finland, India, Ireland, Portugal, the United Kingdom, and the United States. Carlsberg acquired S&N's business in China, France, Greece, Russia, Belarus, Estonia, Latvia, Kazakhstan, Ukraine, Uzbekistan, and Vietnam.

**(¶5)** Heineken NV acquired S&N UK, NFB, the Brand, and SNIC as part of the businesses, assets and investments it received from the joint venture. Pursuant to the agreement between S&N and Sunrise Acquisitions, Heineken NV assumed exclusive control over and liability for the S&N subsidiaries, effective April 28, 2008.

**(¶6)** On April 28, 2008, SNIC sent a letter to each of its United States distributors regarding Sunrise Acquisitions' acquisition of S&N and its subsidiaries. In the correspondence, SNIC advised "S&N Breweries will no longer be supplying [the Brand] to us on or before September 1, 2008. Once we are no longer importing [the Brand] into the United States, our contract with you will terminate accordingly. * * * [The Brand is] in the process of being acquired by Heineken NV."

**(¶7)** On May 1, 2008, HUSA sent a letter to each of its United States distributors regarding the acquisition, and indicating HUSA expected "to be appointed as the US importer for [the Brand] at the earliest opportunity, but no later than September 1, 2008." Thereafter, on May 21, and 27, 2008, HUSA sent identical letters to all of its United States distributors, including Esber, advising the distributors HUSA

would, in fact, "become the exclusive US importer for the [Brand] on September 1, 2008." By letter dated June 23, 2008, NFB appointed HUSA as its new import agent for the Brand. By letter dated July 9, 2008, SNIC informed HUSA of SNIC's relinquishment of its representation as the prior import agent of the Brand in order to allow HUSA to become the new import agent. HUSA sent a letter to the Ohio Department of Commerce, Division of Liquor Control, on August 25, 2008, notifying the Department that HUSA would be appointed the sole US importer of the Brand effective September 1, 2008. HUSA indicated SNIC and NFB had authorized such.

(¶8) On October 24, 2008, HUSA notified Esber it was terminating Esber's franchise in the Brand pursuant to R.C. 1333.85(D). On November 25, 2008, Esber filed a declaratory judgment action against Heineken NV[1], its sister companies, Superior Beverage Group, Ltd. and Central Beverage Group Ltd., and HUSA. Esber sought a declaration the termination of its franchise in the Brand was unlawful. The trial court granted a temporary restraining order on November 26, 2008, temporarily enjoining HUSA from terminating Esber's franchise. Via Judgment Entry filed December 15, 2008, the trial court extended the temporary restraining order until final judgment in the matter.

(¶9) The parties filed Joint Stipulations of Fact as well as other evidentiary documentation on June 1, 2009. After filing their respective merit and reply briefs, the parties submitted Count One of the Complaint to the trial court for a determination and declaration as to "whether [HUSA's] attempted termination of [Esber's] franchise by way of correspondence dated October 24, 2008, was lawful."

---

[1] Esber's claims against Heineken NV were voluntarily dismissed.

**(¶10)** Via Judgment Entry filed September 18, 2009, the trial court granted declaratory judgment in favor of Esber. The trial court found Heineken NV, the indirect parent company of HUSA, acquired S&N, its UK and US breweries, including NFB and SNIC as well as the Brand, effective April 28, 2008. The trial court further determined, as a matter of law, the transfer of import rights in the Brand, effective September 1, 2008, was merely a transfer from one Heineken controlled entity, NFB, to another Heineken controlled entity, HUSA. Based upon this Court's decision in *Esber Beverage¸Co v. InBev USA*, Stark App. No. 200CA113, 2007-Ohio-927, the trial court concluded the acquisition of import rights by HUSA as of September 1, 2008, did "not constitute a 'successor manufacturer' transaction permitting termination under the Act"; therefore, HUSA's attempted termination of Esber's franchise on October 24, 2008, was unlawful. September 18, 2009 Judgment Entry at 6, 9.

**(¶11)** HUSA filed a timely appeal to this Court. This Court dismissed the appeal for lack of a final appealable order. *Esber Beverage Co. v. Heineken USA, Inc.*, Stark App. No. 2009CA00258, 2010-Ohio-2983. Upon remand, the parties settled the remaining claim of intentional interference with business relationship. The trial court issued a Judgment Entry of Settlement and Dismissal with Respect to Remaining Count on January 26, 2011. As a result, the September 18, 2009 Judgment Entry became a final, appealable order.

**(¶12)** It is from these judgment entries, HUSA appeals, raising as error:

**(¶13)** "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS SEPTEMBER 18, 2009 JUDGMENT ENTRY, BECAUSE HUSA IS A 'SUCCESSOR

MANUFACTURER' UNDER R.C. 1333.85(D) AND IT PROVIDED TIMELY NOTICE OF TERMINATION TO ESBER.

(¶14) "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING INJUNCTIVE RELIEF IN ITS SEPTEMBER 18, 2009 AND NOVEMBER 26, 2008 JUDGMENT ENTRIES, BECAUSE IN THE EVENT OF A WRONGFUL TERMINATION OHIO'S ALCOHOLIC BEVERAGE FRANCHISE ACT PROVIDES FOR MONETARY DAMAGES, NOT INJUNCTIVE RELIEF.

(¶15) "III. THE TRIAL COURT ERRED AS A MATTER OF LAW, BECAUSE ESBER IS JUDICIALLY ESTOPPED FROM ARGUING THAT NOTICE SHOULD HAVE BEEN SENT AFTER APRIL 28, 2008, BECAUSE ESBER SIMULTANEOUSLY TOOK THE OPPOSITE POSITION IN ANOTHER STARK COUNTY CASE."

I

(¶16) In the first assignment of error, HUSA asserts the trial court erred in finding HUSA was not a "successor manufacturer" under R.C. 1333.85(D), and finding HUSA's attempted termination of Esber's franchise was unlawful pursuant to the Act.

(¶17) The Act governs the franchise relationships between manufacturers and distributors of alcoholic beverages, including beer, within Ohio. Under R.C. 1333.85, a franchise cannot be terminated absent prior consent unless just cause exists and notice is provided. R.C. 1333.85. R.C. 1333.85(A) lists three situations which always constitute just cause: (1) voluntary bankruptcy; (2) involuntary bankruptcy; or (3) loss of liquor permits. R.C. 1333.85(B) lists four situations which never constitute just cause: (1) failure of a party to take action that would result in a violation of federal or state law; (2) restructuring, other than in bankruptcy, of a manufacturer's business; (3) unilateral

alteration of the franchise by a manufacturer for a reason unrelated to any breach of the franchise or violation of R.C. 1333.82 and 1333.86; and (4) "a manufacturer's sale, assignment, or other transfer of the manufacturer's product or brand to another manufacturer over which it exercises control." R.C. 1333.85(C) governs how a manufacturer and distributor should deal with excess inventory in case of termination.

(¶18) R.C. 1333.85(D) is an exception to the general rule requiring just cause. Under the terms of (D), if a successor manufacturer "acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer," then it can terminate, via written notice, a previous manufacturer's franchise agreements within 90 days of the date of the acquisition. R.C. 1333.85(D). Upon termination, the "distributor shall sell and the successor manufacturer shall repurchase the distributor's inventory of the terminated or nonrenewed product or brand" at the "laid-out cost to the distributor including freight and cartage." R.C. 1333.85(C) and (D). The successor manufacturer must also compensate the distributor "for the diminished value of the distributor's business that is directly related to the sale of the product or brand terminated." R.C. 1333.85(D). The value of directly related business includes, but is not limited to, "the appraised market value of those assets of the distributor principally devoted to the sale of the terminated ... product or brand and the goodwill associated with that product or brand." R.C. 1333.85(D).

(¶19) HUSA argues it is a "successor manufacturer" under R.C. 1333.85(D), and the October 24, 2008 notice of termination letter sent to Esber was timely and legal.

**(¶20)** Relying upon this Court's decision in *Esber Beverage Co. v. InBev USA*, supra, the trial court found Heineken NV's acquisition of the Brand and the S&N businesses on April 28, 2008, constituted a "successor manufacturer" transaction under the Act. However, the trial court found to the contrary with respect to HUSA's acquisition of the import rights to the Brand, effective September 1, 2008. The trial court concluded NFB's appointment of HUSA as the new import agent of the Brand did not constitute a "successor manufacturer" transaction. We agree with the trial court.

**(¶21)** In *Esber Beverage Co. v. InBev USA*, supra, this Court held R.C. 1333.85(D) is not triggered in the case of an assignment or other transfer of the manufacturer's product or brand to another manufacturer over which it exercises control. This Court analyzed the intent of the Legislature, noting:

**(¶22)** " 'A court must read various provisions of a statute consistently and presume that the legislature intended the entire statute to have meaning and effect. *Taber v. Ohio Dept of Human Services,* 125 Ohio App.3d 742, 747 (Ohio App.1998); C.R.C. § 1.47(B). No plausible reason exists as to why the legislature would expressly deny termination rights in one section, then several paragraphs later, create an exception that would swallow the original rule. Moreover, it would not make sense for § 1333.85(D) to condition termination rights on a "merger or acquisition," if a contrived sale and/or paper merger, like the merger in this case, qualified. If the legislature truly intended to grant manufacturers the ability to buy their way out of franchise agreements by paying the distributor for the diminished value of its business, it would have simply said so'." Id. at para. 64, citing *InBev USA, LLC. v. Hill Distributing Co., et al.,* Case No. 2:05-CV-00298 (S.D. Ohio, April 3, 2006).

**(¶23)** Furthermore, the "Act is designed in part to protect distributors from certain practices of beverage manufacturers. It recognizes that distributors often have a substantial investment in their businesses, including the physical assets and real property used to distribute the manufacturers' products, and that to allow a manufacturer unilaterally to terminate a franchise agreement puts the franchise distributors at great risk of harm. The just cause requirement for terminating a franchise agreement is intended to protect the franchisee from this type of arbitrary and potentially coercive act.

**(¶24)** "If the exception to the just cause requirement for successor manufacturers were read narrowly, and the proceedings about compliance with that provision were confined to a review of documents alone, it would be too easy for a manufacturer to set up a new entity which, on paper, looks like a business that is not under the control of its predecessor, while at the same time exercising control over the new entity by disregarding the language of the written instruments that purported to transfer control. Before the franchisee is deprived of what the Ohio legislature clearly regards as an important right not to lose the franchise for insufficient reasons, the franchisee ought to be entitled to test the reality of any transaction that might result in the loss of the franchise." *Beverage Distributors, Inc. v. Miller Brewing Co.,* Case Nos. 2:08-cv-827, 2:08-cv-931, 2:08-cv-1112, 2:08-cv-1131, 2:08-cv-1136, 2:09-cv-0022 (S.D. Ohio, June 2, 2009).

**(¶25)** Even though NFB's appointment of HUSA as the import agent for the Brand was not effective until September 1, 2008, Heineken NV owned and controlled both NFB and HUSA as of April 28, 2008. All of the correspondences from HUSA to its

Ohio distributors, prior to September 1, 2008, acknowledged the change. We find the Legislature did not intend for a corporation to be able to manipulate the date of a transaction in order to circumvent the 90 day notice provision in R.C. 1333.85. We further find the trial court correctly analyzed the transaction under R.C. 1333.85(B)(4). HUSA, therefore, did not timely, legally terminate Esber's franchise.

**(¶26)** HUSA relies upon *Superior Beverage Co., Inc. v. Schieffelin & Co.* Case Nos. 1:05 CV 0834, 4:05 CV 0868 (N.D. Ohio, Sept. 20, 2007), in support of its position the appointment of import rights from NFB to HUSA was a "successor manufacturer" transaction. We find HUSA's reliance on *Schieffelin* to be misplaced. The facts in the instant action are distinguishable from the facts of the *Schieffelin* case. Heineken NV had full control of both NFB and HUSA whereas Shieffelin was a 50% partner, sharing control with another entity.

**(¶27)** HUSA's first assignment of error is overruled.

II

**(¶28)** In the second assignment of error, HUSA maintains the trial court erred in granting injunctive relief as the Act only provides for monetary damages.

**(¶29)** In *Tri–County Wholesale Dist. v. The Wine Group,* No. 2:10–cv–693 (S.D.Ohio Sept. 2, 2010), the United States District Court for the Southern District of Ohio, addressed the same argument as HUSA asserts herein. The Court found:

**(¶30)** "The Franchise Act contemplates suits for "damages *or other relief."* Ohio Rev.Code § 1333.87 (emphasis added). Moreover, numerous courts have issued injunctions preserving the rights of distributors under the Franchise Act until the merits could be fully litigated, a fact that presumably has not escaped the Ohio General

Assembly's notice. *See, e.g., InBev USA LLC v. Hill Distrib. Co.,* No. 2:05-cv-298 (S.D.Ohio Mar. 31, 2005) (granting temporary restraining order); *Esber Beverage Co. v. Labatt USA Operating Co.,* No.2009CV03142 (Stark Cty. Ohio Com. Pl. Dec. 1, 2009) (granting preliminary injunction)." Id. at *2. We agree.

**(¶31)** Based upon the language of R.C. 1333.87, we find the trial court did not err in granting injunctive relief to Esber.

**(¶32)** HUSA's second assignment of error is overruled.

III

**(¶33)** In the final assignment of error, HUSA submits the trial court erred in not finding Esber was judicially estopped from taking a position in the instant action while simultaneously taking the opposite position in another Stark County action.

**(¶34)** The doctrine of judicial estoppel "forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, at para. 25 (Citations omitted*).* "The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." Id.

**(¶35)** HUSA submits Esber was judicially estopped from arguing the notice of termination should have been sent prior to September 1, 2008. HUSA explains, in an unrelated case, *Esber Beverage v. Ste. Michelle Wine Estates*, Stark County Court of Common Pleas Case No. 2008CV03368, Esber argued a notice of termination sent prior to the date on which the supplier became registered with the State of Ohio was premature; therefore, not valid. The *Ste. Michelle* action was resolved and dismissed.

There is no record demonstration the trial court accepted Esber's position in that matter. Accordingly, we find HUSA has not satisfied the third criteria, to wit: that the prior position was accepted by the court.

(¶36)  HUSA's third assignment of error is overruled.

(¶37)  The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Farmer, J.  and

Wise, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer _____
HON. SHEILA G. FARMER


s/ John W. Wise_____
HON. JOHN W. WISE

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

ESBER BEVERAGE COMPANY          :
                                :
    Plaintiff-Appellee          :
                                :
-vs-                            :          JUDGMENT ENTRY
                                :
HEINEKEN USA, INC, ET AL        :
                                :
    Defendants-Appellants       :          Case No. 2011CA00033


For the reasons stated in our accompanying Opinion, the judgment of the Stark

County Court of Common Pleas is affirmed.  Costs to Appellants.


s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/ John W. Wise_____
HON. JOHN W. WISE